UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALICIA HART,

    Plaintiff,

v.                                                   Case No. 2:20-cv-554-JLB-NPM

BEAR STAFFING SERVICES, INC.,

    Defendant.

## **ORDER**

Plaintiff Alicia Hart sues Defendant Bear Staffing Services, Inc. ("Bear Staffing") for race and disability employment discrimination under Title VII of the Civil Rights Act ("Title VII") of 1964, 42 U.S.C. § 2000e; 42 U.S.C. § 1981; and the Americans with Disabilities Act ("ADA") of 1990, 42 U.S.C. § 12101. (Doc. 33.) Bear Staffing moves to dismiss and argues that: (1) Count I of the Complaint is a shotgun pleading because it does not separate two distinct ADA claims; (2) the Complaint identifies no similarly situated individual necessary to state a discriminatory discharge claim under Title VII or Section 1981 (Counts II and III); and (3) Ms. Hart did not exhaust her Title VII hostile-work-environment claim (Count IV) because she failed to raise it in her Equal Employment Opportunity Commission ("EEOC") charge. (Doc. 40.)

Only Bear Staffing's shotgun-pleading argument warrants dismissal of Count I. Otherwise, and contrary to Bear Staffing's contention, Ms. Hart need not identify a similarly situated individual to state a discriminatory discharge claim.

And her hostile work environment claim reasonably arises from the facts she alleged in her EEOC charge. Accordingly, Bear Staffing's motion to dismiss (Doc. 40) is **GRANTED IN PART** and **DENIED IN PART,** and the Court will allow Ms. Hart to amend her complaint.

## DISCUSSION[1]

Ms. Hart is an African-American who receives regular medical treatment for gastrointestinal reflux disease. (Doc. 33 ¶¶ 2, 12.) Bear Staffing hired her as a staffing specialist on March 4, 2019, and Shelley Seip was Ms. Hart's direct supervisor. (Id. ¶¶ 8, 13.) Ms. Hart informed Ms. Seip of her medical condition and treatment. (Id. ¶ 15.) Bear Staffing ultimately terminated Ms. Hart's employment on September 5, 2019 because she missed too many days of work. Ms. Hart maintains, however, that her absences were either pre-approved by Ms. Seip or necessary for her to receive medical treatment. (Id. ¶ 18, 19, 21–24.)

Ms. Hart asserts that Bear Staffing—through Ms. Seip—fired her because she is black. (Id. ¶¶ 25, 32–33.) The Complaint details several occasions when she heard Ms. Seip make racist or racially insensitive comments to other black

---

[1] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1274 n.1 (11th Cir. 1999) (citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir.1998)). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under this standard, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

individuals and herself—including one such comment from Bear Staffing's president. (Id. ¶¶ 28(a)–(e), 29(a)–(c), 30.) On January 10, 2020, Ms. Hart, through counsel, filed a timely EEOC charge alleging reasonable-accommodation and discharge violations under the ADA and Title VII. (Id. ¶ 6; Doc. 40-1, Ex. A at 3.) The EEOC gave her a right-to-sue letter on May 18, 2020. (Doc. 33-1, Ex. A. at 1.) Ms. Hart then timely filed this lawsuit on June 29, 2020. (Doc. 1.)

**I.    Count I is a Shotgun Pleading**.

Bear Staffing first argues Count I is a shotgun pleading in that it does not separate two distinct legal claims—failure to accommodate and discriminatory discharge, both under the ADA. (Doc. 40 at 5–6.) A shotgun pleading is a complaint that violates either Federal Rules of Civil Procedure 8(a)(2) or 10(b). Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1320 (11th Cir. 2015).[2] Given their confusing nature, shotgun pleadings are "flatly forbidden." Id. at 1320 (citation omitted). The type of shotgun pleading that Bear Staffing identifies here is a complaint that does not separate "each cause of action or claim for relief" into a different count. Id. at 1323.

Much of the confusion over Count I arises from its title: "Failure to Accommodate and Discriminatory Discharge in Violation of 42 U.S.C. § 12112(a), the Americans with Disabilities Act." (Doc. 33 at 9.) Ms. Hart's response tries to

---

[2] Those rules require that a complaint provide a short and plain statement of the claim in numbered paragraphs limited to a single set of circumstances with each claim arising from a separate transaction or occurrence in a different count if it would promote clarity. Fed. R. Civ. P. 8(a)(2), 10(b).

clarify that Count I raises only a single claim of failure to accommodate and that Bear Staffing "failed to reasonably accommodate her ***by discharging her***." (Doc. 41 at 2 (emphasis in original).) But the clarification is not illuminating. On the one hand, Ms. Hart states that the "damages flowing from Defendant's failure to accommodate Plaintiff are the same damages flowing from Defendant's termination of her employment – it is the same claim." (Id. at 2–3.) On the other, if the Court determines Count I is a shotgun pleading, she "requests leave to amend her complaint to plead those claims separately." (Doc. 41 at 3 (emphasis added).) Given that it is unclear whether Ms. Hart intends only to bring a reasonable accommodation ADA claim or if she believes her ADA discharge claim is so similar that she may assert it simultaneously (as pleaded), the Court will dismiss without prejudice Count I and allow Ms. Hart leave to replead the claims (separately).[3]

## II.   The Complaint Need Not Identify a Similarly Situated Individual.

Next, Bear Staffing argues that the Complaint fails to identify a similarly situated, non-black comparator who received more favorable treatment than Ms. Hart, and therefore she cannot allege discriminatory discharge in Counts II and III. (Doc. 40 at 6–8.)[4] But as Ms. Hart correctly notes, she may state a prima facie discriminatory-discharge claim by showing "that [s]he was replaced by someone

---

[3] Doing so would promote clarity and efficiency. As Bear Staffing points out, a failure to accommodate claim under the ADA has separate and distinct elements from a discriminatory discharge claim. (Doc. 40 at 5 (citing cases).)

[4] Counts II and III respectively assert discriminatory discharge under Title VII and Section 1981. Both statutes share the same requirements of proof and analytical framework. Lewis v. City of Union City, 918 F.3d 1213, 1220 n.5 (11th Cir. 2019) (en banc).

outside [her] protected class or received less favorable treatment than a similarly situated person outside [her] protected class." Flowers v. Troup Cnty. Sch. Dist., 803 F.3d 1327, 1336 (11th Cir. 2015) (emphasis added); Ward v. Troup Cnty. Sch. Dist., No. 20-11697, 2021 WL 1235170, at *2 (11th Cir. Apr. 1, 2021) (same).[5]

Here, the Complaint alleges that Bear Staffing replaced Ms. Hart (a black woman) with a non-black individual. (Doc. 33 ¶ 50.) Although Bear Staffing notes that this is a conclusory allegation, its point hinges on the assumption that a specific comparator must be identified, and therefore Ms. Hart's allegation is not detailed enough. (Doc. 40 at 8.) The Court disagrees. From the disparaging comments Ms. Hart's supervisor(s) made about her and other black individuals, the Court can infer from the Complaint that the decision to replace Ms. Hart with a non-black individual suggests an illegal racial preference. Cf. Hawkins v. Ceco Corp., 883 F.2d 977, 984 (11th Cir. 1989) (allegation that white man replaced black plaintiff not enough to establish prima facie discriminatory discharge case "[w]ithout the underlying suggestion of an illegal preference for a nonminority"). Thus, Bear Staffing's argument fails on this point.

---

[5] Cases that analyze a plaintiff's discrimination claim using a comparator analysis—like the ones Bear Staffing relies on—did so "because that was the basis on which each of the plaintiffs claimed that he or she could meet his or her prima facie case." Hinton v. Ala. State Univ., No. 2:18-CV-00994-RAH, 2021 WL 922176, at *2 (M.D. Ala. Mar. 10, 2021). But that is not the basis of the Complaint here.

### III. Ms. Hart's Hostile Work Environment Claim Arises from the Scope of Her EEOC Charge.

Finally, Bear Staffing argues that Ms. Hart did not exhaust her Title VII hostile-work-environment claim (Count IV) because she did not expressly mention that claim in her EEOC charge. (Doc. 40 at 10.) It notes that her EEOC charge "does not reference or mention hostile work environment" and was instead premised "solely on" denial of reasonable accommodation and discharge under the ADA and because of her race under Title VII. (Id. (referencing Doc. 40-1, Ex. A at 3).)

Ms. Hart's Complaint is limited by the scope of the EEOC investigation that "can reasonably be expected to grow out of the charge of discrimination." Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1280 (11th Cir. 2004). "Courts are nonetheless extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]. As such, [the Eleventh Circuit] has noted that the scope of an EEOC complaint should not be strictly interpreted." Litman v. Dristy, 703 F. App'x 766, 771 (11th Cir. 2017) (citing Gregory, 355 F.3d at 1280). Rather:

> As long as allegations in the judicial complaint and proof are "reasonably related" to charges in the administrative filing and "no material differences" between them exist, the court will entertain them . . . . Judicial claims which serve to amplify, clarify, or more clearly focus earlier EEO complaints are appropriate. Allegations of new acts of discrimination, offered as the essential basis for the requested judicial relief are not appropriate.

Wu v. Thomas, 863 F.2d 1543, 1547 (11th Cir. 1989) (citations omitted).[6]

---

[6] To establish a hostile work environment claim, Ms. Hart must show that "[her] workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" Harris v. Forklift Sys.,

By way of illustration, the Eleventh Circuit addressed a nearly identical scenario involving a plaintiff who filed an EEOC charge for discriminatory discharge but later alleged a hostile work environment claim in his civil complaint. Green v. Elixir Indust., Inc., 152 F. App'x 838, 840 (11th Cir. 2005). Like Ms. Hart, the plaintiff in Green stated in his EEOC charge that he was terminated for attendance policy violations, white coworkers received more favorable treatment, and he believed he had been discriminated against and terminated because of his race. Id. Similarly, his EEOC charge "noted the date of his termination as both the earliest and latest date of discriminatory conduct." Id. at 841. The Eleventh Circuit held that those facts only related to the plaintiff's termination and did not "encompass a hostile work environment claim." Id.

Yet the same cannot be said here; there is one critical difference between this case and the cases Bear Staffing relies on, which found a plaintiff may not plead a hostile work environment claim that he or she did not previously mention in his or her EEOC charge. (Doc. 40 at 9–11 (discussing cases).) Ms. Hart's EEOC charge states that "[d]uring Ms. Hart's time at [Bear Staffing], she heard Ms. Seip make many racist and racially-insensitive comments about black African-Americans." (Doc. 40-1, Ex. A ¶ 13 (emphasis added).) It then provides two examples of these comments, one of which happened on "several occasions." (Id.) As Bear Staffing itself recognizes, the Complaint includes those two examples in support of Ms. Hart's hostile work environment claim. (Doc. 40 at 10 (citing Doc.

---

Inc., 510 U.S. 17, 21 (1993) (citation omitted).

33 ¶¶ 28(a), (c)).) But because these allegations were "used to describe her retaliatory discharge based on race," Bear Staffing maintains Ms. Hart cannot use them to "form the basis of her newly crafted racially hostile work environment claim." (Id. at 11.)[7]

While the claim may be new, the allegations are not. Ms. Hart's EEOC charge <u>did include</u> factual allegations which encompass a hostile work environment claim. Had the EEOC investigated the charge's allegations of racial discrimination (even in the context of accommodation and discharge) it would have probably asked Ms. Hart about the "many" racial comments Ms. Hart made to and about black individuals—of which Ms. Hart is one. The charge also identifies more than just sporadic, episodic instances of racial discrimination. Rather, it qualifies Ms. Seip's comments as occurring on "several occasions" (<u>i.e.</u>, pervasive) during the time Ms. Hart worked for Bear Staffing. <u>See, e.g.</u>, <u>Ambus v. Autozoners, LLC</u>, 938 F. Supp. 2d 1225, 1231 (M.D. Ala. 2013) (distinguishing <u>Green</u> and noting that "[t]his is not . . . a case in which a plaintiff seeks to assert a hostile environment claim after only having identified a discrete employment action"); <u>Cargo v. Kan. City S. Ry. Co.</u>, No. 05-2010, 2010 WL 2804057, at *4 (W.D. La. July 13, 2010) ("[The plaintiff's] claims of racial discrimination do not arise from a single isolated incident; rather, he refers" to several incidents so "the investigation which would be expected to grow

---

[7] To be fair, Bear Staffing's argument does have some merit. As it correctly notes, Ms. Hart's EEOC charge never expressly mentions a hostile work environment claim. (Doc. 40-1, Ex. A at 3.) Moreover, the charge identifies September 5, 2019, Ms. Hart's date of termination, as both the earliest and latest dates the alleged discrimination took place. (Id. at 2.)

out of the plain language of [his] EEOC charge could not reasonably be limited to his . . . discharge").

Finally, with the possible exception of Bear Staffing's president's comment, the Complaint does not allege new instances of discrimination like gender discrimination or failure to promote.   It instead provides further examples of Ms. Seip's racist remarks "which serve to amplify, clarify, or more clearly focus" the EEOC charge's allegations.   Wu, 863 F.2d at 1547.   Put differently, Count IV arises from both the same subject matter (e.g., racial discrimination) and factual predicates (e.g., Ms. Seip's many racist comments) as Ms. Hart's accommodation and discharge allegations in her EEOC charge.   Although Ms. Hart may not have specifically intended for the EEOC to investigate as much, the charge contains enough facts to support an inference that the EEOC would have investigated a hostile work environment.   Cf. Ramon v. AT&T Broadband, 195 F. App'x 860, 866 (11th Cir. 2006) (EEOC charge's allegations about disparity in pay and disability leave did not "reasonably point[] to the kind of pervasive and oppressive conditions" showing the plaintiff intended for EEOC to investigate a hostile work environment claim).   Thus, the Court finds Count IV proper as pleaded.

## CONCLUSION

Ms. Hart has largely met her burden at the motion to dismiss stage.   Her Title VII and Section 1981 discriminatory discharge claims need not identify a comparator as the Complaint states Bear Staffing replaced her with a non-black individual.   And, considering the factual allegations of her EEOC charge about Ms.

Seip's many racial comments, Ms. Hart has exhausted Count IV's hostile work environment claim. But the Court is unsure what exactly Ms. Hart is pleading in Count I and will therefore allow her leave to amend in that regard. If the Court cannot figure it out, then it cannot in good conscience ask Bear Staffing to figure it out.

Accordingly, it is **ORDERED** that:

1. Bear Staffing's motion to dismiss (Doc. 40) is **GRANTED IN PART** and **DENIED IN PART**.

2. Count I of the Complaint (Doc. 33 at 9–10) is **DISMISSED WITHOUT PREJUDICE**. Ms. Hart must file an amended pleading consistent with this Order **on or before May 12, 2021**.

3. The motion to dismiss (Doc. 40) is **DENIED** to the extent it seeks any greater or different relief than this Order grants.

**ORDERED** at Fort Myers, Florida, on April 28, 2021.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE